JUDGE OETKEN

14 CV 5734

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JAMIE NARVAEZ,

Plaintiff,

v.

CITY OF NEW YORK, OFFICER ANTHONY
SINACORI (Shield #1717), OFFICER
CHRISTOPHER NOTO (Shield #11724),
CORRECTIONAL OFFICER "JOHN DOE," and
OFFICERS "JOHN DOE" #1 through #5, individually
and in their official capacities, (the names "John Doe"
being fictitious, as the true names of these individuals
are presently unknown),

Defendants.

**COMPLAINT**

Jury Trial Demanded

Plaintiff Jamie Narvaez, by his attorney, Kim E. Richman, complaining of the

Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

Plaintiff brings this action for damages and attorney's fees pursuant to 42 U.S.C. §§ 1983

and 1988, for the wrongful acts of Defendants CITY OF NEW YORK, OFFICER ANTHONY

SINACORI (Shield #1717), OFFICER CHRISTOPHER NOTO (Shield #11724),

CORRECTIONAL OFFICER "JOHN DOE," and OFFICERS "JOHN DOE" #1 through #5,

individually and in their official capacities, (the names "John Doe" being fictitious, as the true

names of these individuals are presently unknown), as Officers of the New York City Police

Department, and other agencies of the City of New York, all acting under color of state law and

pursuant to their authority, in violation of Plaintiff's rights under the Constitutions and laws of

the United States and of the State of New York.

## JURISDICTION

1.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth, Fifth,

Sixth and Fourteenth Amendments to the United States Constitution.

2.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, this being an action

seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.     Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as to any and

all of Plaintiff's claims arising under New York state law as such claims share a common

nucleus of operative facts with Plaintiff's federal claims herein.

## VENUE

4.     Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the

District in which a substantial part of events or omissions giving rise to the claim occured.

## TRIAL BY JURY

5.     Plaintiff demands a trial by jury on each and every one of his claims as pled

herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     Plaintiff JAIME NARVAEZ is a Hispanic male and was at all relevant times a

resident of the borough of Manhattan in the County and State of New York.

7.     Defendant CITY OF NEW YORK ("CITY") is and was at all relevant times a

municipality of the State of New York. Defendant CITY operates, manages, directs and controls

the New York City Police Department ("NYPD"), the City of New York Department of

Correction ("NYDOC"), and other municipal agencies and departments which are responsible

for carrying out law enforcement activities under color of state law.

8.     Defendants OFFICER ANTHONY SINACORI (Shield #1717), OFFICER

CHRISTOPHER NOTO (Shield #11724), CORRECTIONAL OFFICER "JOHN DOE," and OFFICERS "JOHN DOE" #1 through #5 are and were at all relevant times police or correction officers, supervisors, and/or policymakers employed by Defendant CITY with the NYPD and/or other CITY agencies and acting under color of state law.

9.      At all times relevant hereto and in all their actions alleged herein, Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of Defendant CITY and its agencies and departments, including the NYPD and NYDOC, and pursuant to their authority as employees, servants and agents of the NYPD, NYDOC, and/or other agencies, and within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and law enforcement officers.

10.      Defendant CITY was responsible for the hiring, training, supervision, discipline, retention and promotion of officers, supervisors, and employees within its agencies, including the NYPD, NYDOC, and/or other agencies which employed the Defendants herein.

## FACTS

11.      On or about the afternoon of April 17, 2013 at approximately 2:20 p.m., Plaintiff Jamie Narvaez was lawfully present with a group of friends and acquaintances at or around his residence at 216 W. 62nd Street in Manhattan.

12.      Once Plaintiff observed the group disperse, he proceeded toward W. 64th Street.

13.      Plaintiff then heard someone yell, "freeze," as he was proceeding toward 64th Street, which caused Plaintiff to become aware that Defendant Officer Christopher Noto (Shield #11724) was in pursuit of him. At this point, Defendant stopped, dropped down to his knees, and put his hands clearly behind his head. Defendant Officer Noto continued to pursue Plaintiff without probable cause or reasonable suspicion to do so.

14. As Plaintiff was on his knees with his hands behind his head, Defendant Officer Noto continued to pursue Plaintiff without probable cause or reasonable suspicion to do so. Defendant Officer Noto then unlawfully arrested Plaintiff, tackled Plaintiff to the ground, placed handcuffs on Plaintiff that were too tight, and zealously pressed the left side of Plaintiff's head and face into the hard concrete, causing Plaintiff pain and lacerations to the left side of Plaintiff's face.

15. Defendant Officer Noto then placed his entire weight on Plaintiff by sharply digging his knees into Plaintiff's back. Despite Plaintiff being completely restrained, lying prostate on the ground, and not attempting to move or fight back, Defendant Officer Noto proceeded to punch Plaintiff with a closed fist approximately ten times on the right side of Plaintiff's head and face.

16. Several of Plaintiff's community members and friends witnessed Defendant Officer Noto tackle and beat Plaintiff and some of them attempted to take photos. When they protested to Defendant Officer Noto beating Plaintiff, Defendant Officer Noto screamed at them to "shut up," as he continued to punch Plaintiff in the face and head.

17. Defendant Officer Noto continued to forcibly punch Plaintiff for approximately ten minutes, at which time several other Defendant NYPD police officers arrived at the scene.

18. Next, Defendant Officer Noto stood Plaintiff up and leaned him against a police car. Plaintiff then notified Defendant Officers that he needed help and could not breathe. At this time, Plaintiff's face and neck were visibly bloody and there was a significant amount of blood flowing out of Plaintiff's mouth. After Plaintiff requested help several times, Defendant Officer Jane Doe #1 responded by allowing Plaintiff to sit in the back of a police car with the car door open.

19.     Upon information and belief, during the time, two other Defendant NYPD Officers pursued a bystander they believed had taken photos or videos of what had occurred, and demanded that the bystander relinquish his camera phone to police.

20.     Defendant Officer Jane Doe #1 and Defendant Officer John Doe #1 then transported Plaintiff to the NYPD 20th Precinct, where he was processed, searched, and placed in a cell. During this time, Plaintiff repeatedly notified Defendant NYPD Officers that he could not breathe, that he had been beaten by Defendant Officer Noto, and that he needed to go to a hospital.

21.     After Plaintiff was placed in a cell, Defendant NYPD Officers ultimately transported Plaintiff to St. Luke's Roosevelt Hospital in Manhattan, where Plaintiff was examined, x-rayed, and treated for several hours for the various fractures, contusions, and other ailments caused to Plaintiff when he was beaten by Defendant Officer Noto. Plaintiff had reported to hospital staff that his pain at that time was an "8 on a scale from 1 to 10," that he could not open and close his mouth, and that the pain medications he was given were not effective in alleviating his pain.

22.     Defendant NYPD Officers then transported Plaintiff back to Central Booking, located at 100 Centre Street, New York, NY, where he was locked in a cell for the rest of the evening and overnight. Plaintiff was unable to eat any food during this time because of the injuries to his jaw caused by Defendant Officer Noto.

23. On or about April 18, 2013 Plaintiff was arraigned in the Criminal Court of the City of New York, New York County (Docket no. 2013NY030753) based on false allegations made by Defendant Officer Noto and Defendant Officer Anthony Sinacori (Shield #1717) that were contained in an accusatory instrument in the form of a criminal complaint signed by Defendant

Officer Sinacori.

24. In the aforementioned complaint, Defendant Officer Sinacori claims that Defendant Officer Noto chased after Plaintiff because Defendant Officer Noto was in pursuit of Plaintiff for assaulting a man named "Miguel Toress." Plaintiff denies assaulting anyone on April 17, 2013. Plaintiff also does not recall knowing anyone named Miguel Toress, and does not believe that anyone named Miguel Toress was anywhere near him during the incident that occurred on the afternoon of April 17, 2013.

25. Plaintiff was arraigned for violating N.Y.P.L. § 240.30 Aggravated Harassment in the Second Degree; N.Y.P.L. § 240.26 Harassment in the Second Degree; N.Y.P.L. § 120.00 Assault in the Third Degree (two counts); N.Y.P.L. § 110/120.00 Attempted Assault in the Third Degree; N.Y.P.L. § 205.30 Resisting Arrest; and, N.Y.P.L. § 240.20 Disorderly Conduct. Thereafter, Plaintiff remained in custody because he could not afford the $1,500 bail.

26. Plaintiff was then transported to the Manhattan Detention Complex where he was held for approximately six days. During that time, he continued to suffer severe stress, upset, and physical pain. While incarcerated at the Manhattan Detention Complex, Plaintiff saw a psychiatrist because he could not sleep due to his high level of stress, and Plaintiff saw a nurse who gave him medication for pain.

27. On or about April 23, 2014, Plaintiff was brought to court in the custody of Defendant NYDOC to see whether the criminal complaint filed against him was legally and sufficiently corroborated by an individual possessing personal knowledge of the facts recited therein pursuant to NY Criminal Procedure Law 170.70. Due to Defendant Officer Noto's false swearing of an affidavit attesting to the truth of the allegations in the complaint, however, the case was adjourned for trial and Plaintiff was held in custody of the NYDOC.

28.     Plaintiff was then transported to the Brooklyn Detention Complex where he continued to be detained on the basis of Defendant Officer Noto's false affidavit.

29.     During his incarceration at the Brooklyn Detention Complex, on our around May 10, 2013, Plaintiff was on the phone when another incarcerated man named Thomas Edwards demanded that Plaintiff give the man Plaintiff's phone "PIN" number. Plaintiff did not comply. After Plaintiff used the phone, he returned to his cell to lie down, but before he could, he noticed Edwards standing in the doorway of his cell with a cup in his hand.

30.     Edwards then threw boiling hot water at Plaintiff's face and chest and began punching Plaintiff. Once Plaintiff fell to the floor, Edwards started kicking Plaintiff in the face and in the stomach. Edwards then slammed the cell of Plaintiff's door shut so Plaintiff was locked inside. During these events, no NYDOC officers were present on the floor of the building where Plaintiff's cell was located to prevent or mitigate the attack.

31.     Plaintiff was in need of immediate medical attention and in extreme pain, so he began screaming loudly and repeatedly to Defendant Corrections Officer John Doe #1, who was situated on a lower floor of the building. Plaintiff yelled down to Defendant C.O. John Doe #1 that Plaintiff needed medical help and that it was "an emergency."

32.     Defendant C.O. John Doe #1 ultimately responded to Plaintiff that he would "be there in a few minutes." Although Plaintiff made Defendant C.O. John Doe #1 aware that Plaintiff needed urgent medical care, approximately an hour passed before Defendant C.O. John Doe #1 came up to check on Plaintiff.

33.     During the time Plaintiff was waiting for Defendant C.O. John Doe #1 to let him out of his cell and take him to a hospital, Plaintiff repeatedly told Defendant C.O. John Doe #1 that it was "an emergency." Due to the burning and beating, Plaintiff experienced unbearable

pain and felt like the skin was "melting off" his face. Plaintiff got a wet towel and placed it on his face, and when he looked at the towel he noticed blood and burnt skin had come off of his face.

34. Approximately an hour after Plaintiff began pleading for Defendant C.O. John Doe #1's help, Defendant C.O. John Doe #1 came to Plaintiff's cell and, once he saw the nature of Plaintiff's injuries, Defendant C.O. John Doe #1 immediately unlocked his cell and escorted Plaintiff downstairs where Plaintiff was told to wait for "medical" to arrive. While he was waiting, another incarcerated man told Plaintiff that if Plaintiff made a report as to who threw the water in Plaintiff's face, Plaintiff would be killed.

35. Plaintiff was then moved to the medical area of the Brooklyn Detention Complex, where Defendant Correctional Officers asked him questions about the attack in order to identify the attacker. Approximately two hours had passed from the time Plaintiff was attacked until the time Plaintiff saw a nurse at the Brooklyn Detention Complex. During that time, Plaintiff continued to experience extreme pain.

36. The nurse at the Brooklyn Detention Complex put cream on Plaintiff's burns and notified Plaintiff that he would have to be transported to New York Presbyterian Hospital since that hospital had special services for burns.

37. Plaintiff was treated for his wounds and pain for approximately two to three hours at New York Presbyterian Hospital, and then transported back to the Brooklyn Detention Complex for the rest of the night.

38. At this time, Plaintiff had been incarcerated at the Brooklyn Detention Complex for approximately two weeks.

39. The next morning, Plaintiff was transported back to the Manhattan Detention

Complex where he remained for approximately another week. At the Manhattan Detention Complex, Plaintiff was still experiencing physical pain and mental anguish. Plaintiff once again met with a psychiatrist because of the emotional distress he was experiencing as a result of the beating by Defendant Officer Noto and the assault by Thomas Edwards. The psychiatrist prescribed medication to Plaintiff on the basis of what Plaintiff had told him about what he was going through.

40.     On May 17, 2013 Plaintiff was released from custody as the prosecution was not ready to proceed to trial and more than 30 days had elapsed from Plaintiff's arraignment in violation of NY Criminal Procedure Law 30.30 and his constitutional right to a speedy trial.

41.     On July 22, 2013, the case and all charges in the complaint were dismissed for failure to prosecute in a timely manner again in violation of CPL 30.30 and his constitutional right to a speedy trial.

42.     As a result of the aforementioned violations, Plaintiff was detained for approximately one month; subjected to the humiliation of being unlawfully arrested; beaten severely by Defendant Officer Noto; searched and led away in full public view in front of his community and family, resulting in damage to his esteem and reputation within the community; and forced to unecessarily endure hours of excruciating pain due to Defendants' delay in transporting him to a hospital after he was brutally attacked in his cell.

## FIRST CLAIM FOR RELIEF:
## DEPRIVATION OF FEDERAL CIVIL RIGHTS

43.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

44.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

45.     All of the aforementioned acts by Defendants deprived Plaintiff of the rights, privileges and immunities guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, said violations being actionable under 42 U.S.C. § 1983.

46.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police and corrections officers, with the actual and/or apparent authority attendant thereto.

47.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police and law enforcement officers, pursuant to the customs, usages, practices, procedures and rules of Defendant CITY and its NYPD, all under the supervision of ranking officers of said department.

48.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers, pursuant to the customs, usages, practices, procedures and rules of Defendant CITY and its NYDOC, all under the supervision of ranking officers of said department.

49.     Defendants, collectively and individually, while acting under color of state law, violated Plaintiff's civil rights; these violations were driven and motivated by, reflective of, and carried out pursuant to a custom, usage, practice, procedure or rule of Defendant CITY, which is forbidden by the Constitution of the United States.

50.     By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

## SECOND CLAIM FOR RELIEF:
## FALSE ARREST UNDER 42 U.S.C. § 1983

51.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

52.     As a result of Defendants' aforementioned conduct, Plaintiff was subject to an illegal, improper and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege or consent.

53.     As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time and Plaintiff was at all times aware of his confinement. Plaintiff was put in fear for his safety and subjected to handcuffing and other physical restraints, without probable cause.

54.     As a result of his false arrest, Plaintiff was subjected to humiliation, ridicule and disgrace before his neighbors and peers.  Plaintiff was discredited in the minds of many members of the community.

## THIRD CLAIM FOR RELIEF:
## EXCESSIVE FORCE

55.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

56.     The degree of force used by Defendants was excessive, unreasonable and unwarranted.

57.     Defendants' actions were intentional, willful, malicious, egregious, grossly reckless, negligent, unconscionable and unprovoked.

58.     As a result of the excessive force and brutality, Plaintiff sustained substantial pain, bone fractures, contusions, and bruising and swelling about his body.

11

59.     All of the aforementioned acts of Defendants constituted excessive force under the laws of the State of New York and they are liable for said damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

## FOURTH CLAIM FOR RELIEF:
## ASSAULT UNDER NEW YORK LAW

60.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

61.     By the actions described above, the individual Defendants intentionally caused and allowed Plaintiff to be placed in apprehension of imminent harmful and offensive contact.

62.     As a consequence thereof Plaintiff has been injured.

## FIFTH CLAIM FOR RELIEF:
## BATTERY UNDER NEW YORK LAW

63.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

64.     By the actions described above, Defendants intentionally caused and allowed Plaintiff to be struck in a harmful and offensive manner.

65.     As a consequence thereof Plaintiff has been injured.

## SIXTH CLAIM FOR RELIEF:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

67.     Defendants' unlawful conduct, including the violations of Plaintiff's constitutional rights, constituted extreme and outrageous conduct that was beyond the boundaries of decency.

68.     Defendant NYPD officers acted intentionally in their unlawful conduct.

69.     Defendant CITY acted with reckless disregard as to whether its customs, policies, usages, practices, procedures, and rules of its NYPD would result in extreme and outrageous conduct inflicted upon Plaintiff.

70.     Defendants' conduct was the direct and proximate cause of the harm to Plaintiff.

71.     Plaintiff suffered and continues to suffer physical injury, and both Plaintiffs suffered and continue to suffer severe emotional distress, and were otherwise injured, as a result of Defendants' conduct.

## SEVENTH CLAIM FOR RELIEF:
### DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS
### MEDICAL CONDITION IN VIOLATION OF THE UNITED STATES CONSTITUTION

72.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

73.     As described above, Defendants acted with deliberate indifference to Plaintiff's serious medical needs, by among other things, ignoring objective evidence of Plaintiff's serious need for medical care and unduly delaying Plaintiff medical treatment and causing Plaintiff to experience undue suffering and the threat of residual injury.

74.     Defendants consciously disregarded the serious medical risk posed by Plaintiff's injuries by, among other things, unreasonably delaying in providing essential emergency treatment.

75.     As a consequence thereof Plaintiff has been injured.

## EIGHTH CLAIM FOR RELIEF:
### FAILURE TO INTERVENE

76.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporate such allegations by reference as if fully stated herein.

77.     Those Defendants that were present during the time when Plaintiff's constitutional rights were violated, but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

78.     Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments.

79.     As a direct and proximate result of this unlawful conduct, Plaintiff was subjected to excessive force, humiliation, ridicule, and disgrace before their family and peers, confinement, pain and suffering, embarrassment and emotional distress.

**NINTH CLAIM FOR RELIEF:**
**MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983**

80.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

81.     Defendants issued legal process to place Plaintiff under arrest.

82.     Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

83.     Defendants acted with intent to do harm to Plaintiff without excuse or justification.

**TENTH CLAIM FOR RELIEF:**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

84.     Plaintiff JAMIE NARVAEZ repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

85.     Defendants searched, seized and prosecuted Plaintiff despite a complete lack of cause against him, notwithstanding their knowledge that such actions would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

86.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police and law enforcement officers and officials, with the entire actual and/or apparent authority attendant thereto.

87.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of Defendant CITY and its agencies, including the NYPD and NYDOC, all under the supervision of ranking officers of said department.

88.     The aforementioned customs, policies, usages, practices, procedures and Defendant CITY include discriminating against and detaining minority males without reasonable suspicion or having probable cause as to each individual and without evidence of each individual's criminal activity and conducting intrusive body searches without individual particularized suspicion or other justification.

89.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

90.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Plaintiff's constitutional rights.

91.     Defendant CITY, as municipal policymaker in the training and supervision of OFFICER ANTHONY SINACORI (Shield #1717), OFFICER CHRISTOPHER NOTO (Shield #11724), CORRECTIONAL OFFICER "JOHN DOE," and OFFICERS "JOHN DOE" #1

through #5, individually and in their official capacities, (the names "John Doe" being fictitious, as the true names of these individuals are presently unknown), individually and in their official capacities, has pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their rights Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 and the Constitution and laws of the State of New York.

92.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY constituted a deliberate indifference to Plaintiff's constitutional rights.

93.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

94.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY were the moving force behind the constitutional violation suffered by Plaintiff as alleged herein.

95.    All of the foregoing acts by Defendants deprived Plaintiff Jamie Narvaez of federally protected rights, including, but not limited to, the right:

      a.  Not to be deprived of liberty without due process of law;

      b.  Not to be deprived of property without due process of law;

      c.  To be free from search, seizure, arrest and imprisonment not based upon reasonable suspicion and probable cause;

      d.  To be free from cruel and unusual punishment;

      e.  To be free from infliction of emotional distress; and

      f.  To receive equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

2. Punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.


DATED:       New York, New York
             July 25, 2014

                                        Respectfully submitted,

                                        Kim E. Richman
                                        *Attorney for Plaintiff*
                                        **REESE RICHMAN LLP**
                                        875 Avenue of the Americas, 18th Floor
                                        New York, New York  10001
                                        Telephone: (212) 643-0500